IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 20-cv-02756-NYW-KLM

UNITED STATES OF AMERICA,

     Plaintiff,

v.

2007 CADILLAC ESCALADE, VIN: 1GYFK63817R224385,
2012 DODGE CHALLENGER, VIN: 2C3CDYCJ9CH233237,
2012 FORD F150 CREW CAB PLATINUM, VIN: 1FTFW1ET1CFB75862,
2006 HUMMER H2, VIN: 5GRGN23U26H120840,

     Defendants.

MATTHEW VERNON, and
JAIME SANCHEZ,

     Claimants.

_____

**RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

     This matter is before the Court on Claimant Jaime Sanchez's ("Sanchez") **Motion to Apply the Exclusionary Rule** [#48][1] (the "Motion"). Plaintiff filed a Response [#54] in opposition to the Motion [#48], and Claimant Sanchez filed a Reply [#58]. The Motion [#48] has been referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1) and D.C.COLO.LCivR 72.1. *See* [#49]. The Court has reviewed the briefs, the entire case file, and the applicable law, and is sufficiently advised on the premises. For the reasons set

_____

[1] "[#48]" is an example of the convention the Court uses to identify the docket number assigned to a specific paper by the Court's case management and electronic case filing system (CM/ECF). This convention is used throughout this Recommendation.

forth below, the Court respectfully **RECOMMENDS** that the Motion [#48] be **DENIED**.

## I.  Background

On April 21, 2020, Detective Mario Aoki swore to an affidavit in support of a search warrant for 1431 Grand Overlook Street in Colorado Springs, Colorado, which is Claimant Sanchez's residence (hereinafter, "the Overlook Affidavit").  *See* [#48-2].  In part, the Overlook Affidavit stated:

(1)    "On December 10, 2019, Sanchez delivered a clear plastic bag, containing 3.7 gross grams of methamphetamine, Exhibit (EX2), and a clear plastic bag, containing 5.7 gross grams of cocaine, Exhibit (EX3), to CS-20-161483 (CS1).   On December 11, 2019, CS1 delivered EX2 and EX3 to TFO [Jackson Andrews], as witnessed by TFO Marc DeFusco."

(2)    "On March 11, 2020, at approximately 10:00 p.m., during a meeting at Sanchez's residence, 1431 Grand Overlook St, Colorado Springs, CO, Sanchez provided CS1 a quantity of suspected methamphetamine, Exhibit (EX6), contained within a clear ziplock bag."

(3)    On April 19, 2020, "at approximately 10:30 p.m., CS1 visited Sanchez at his residence, 1431 [G]rand Overlook St. During this visit, Sanchez provided CS1 with approximately 0.25 pounds of suspected methamphetamine and a firearm."

(4)    On April 19, 2020, during surveillance of 1431 Overlook Street, SA Robinson observed another target, Josiah Gallegos, arrive and depart from Sanchez's residence, carrying a "medium size package wrapped in white plastic bag."

-2-

(5)   "Later this date [April 19, 2020], SA Robinson was informed by CS-20-162280 (CS2) that Gallegos, driving a Dodge RAM pickup truck, Colorado registration number KWO645, had picked up a quantity of cocaine and methamphetamine from Sanchez's residence."

(6)   "CS2 also informed that approximately 2-3 weeks age [sic], while visiting Sanchez at his residence, CS2 observed Sanchez place a quantity of suspected methamphetamine in a freezer inside his residence. CS2 also stated that Sanchez stores narcotics within a gym bag within his residence."

On April 22, 2020, officers executed the search warrant for 1431 Grand Overlook Street, seizing 457 grams of heroin, 64.4 gross grams of cocaine, two fully loaded firearms, $73,240.00 in U.S. currency, and Defendant 2012 Ford F-150 Crew Cab Platinum, which was registered to Claimant Sanchez.

On January 8, 2021, Detective Jackson V. Andrews ("Andrews") swore to an affidavit in support of a search of 1406 Race Street, Colorado Springs, Colorado (hereinafter, the "Race Affidavit"). *See* [#48-3]. There, Detective Andrews provided a detailed history of his investigation into Claimant Sanchez, beginning in 2004. *See id.* In part, he stated:

(1)   "During my investigation, I contacted Anthony Row, . . . who began assisting me as a CS. My tasks for Row was [sic] to conduct controlled purchases of methamphetamine from members of the Dale Street Locos, to include Sanchez and Gallegos. Despite his attempts, he was unable to make any purchases from Sanchez and Gallegos. However, he obtained small quantities of methamphetamine through his girlfriend, Sarah Duncan, . . .

who was obtaining it from Sanchez and Gallegos."

(2)  "In 2020, I left DEA to return to the gang unit and DEA S/A Fitzroy Robinson took over the investigation into the Sanchez' [sic] drug trafficking organization."

Based on the investigation into Claimant Sanchez's drug trafficking, he was charged in *Colorado v. Sanchez*, 2020CR2298 (El Paso County Dist. Ct.).  On June 18, 2021, he pled guilty to possession with intent to distribute cocaine.  The conduct he agreed to occurred from December 10, 2019 to April 22, 2020.  *See Pl.'s Ex. A, Terms of Plea Agreement* [#54-1] at 1.

On September 11, 2020, in the present action, the Government filed a Verified Complaint for Forfeiture in Rem [#1], seeking civil forfeiture of the defendant assets.  On October 22, 2020, Claimant Sanchez filed a Verified Claim [#11] for the 2007 Cadillac Escalade and the 2012 Dodge Challenger, both seized from 1105 Lindstrom Drive, and the 2012 Ford F150 Crew Cab Platinum, seized from 1431 Grand Overlook Street.  On March 4, 2022, he filed the present Motion [#48] seeking to suppress/exclude certain evidence in this case.

## II.  Standard

In *Franks v. Delaware*, 438 U.S. 154 (1978), "'the Supreme Court held that affiants seeking arrest warrants violate the constitution when they knowingly, or with reckless disregard for the truth, include false statements in a supporting affidavit or omit information which, if included, would prevent the warrant from lawfully issuing.'" *Montoya v. City & County of Denver*, No. 21-1107, 2022 WL 1837828, at *4 (10th Cir. June 3, 2022) (quoting *Kapinski v. City of Albuquerque*, 964 F.3d 900, 905 (10th Cir. 2020)).  This means that "'a

Fourth Amendment violation occurs if (1) an officer's affidavit supporting [an arrest] warrant application contains a reckless misstatement or omission that (2) is material because, but for it, the warrant could not have lawfully issued.'" *Montoya*, 2022 WL 1837828, at *4 (quoting *United States v. Herrera*, 782 F.3d 571, 573 (10th Cir. 2015)).

"[I]t is well established '*Franks* is not limited to false representations made by the affiant himself.'"  *Montoya*, 2022 WL 1837828, at *5 (quoting *Marin v. King*, 720 F. App'x 923, 936 (10th Cir. 2018)).  *Franks* "recognized 'police could not insulate one officer's deliberate misstatement merely by relaying it through an officer-affiant personally ignorant of its falsity.'"  *Montoya*, 2022 WL 1837828, at *5 (quoting *Franks*, 428 U.S. at 163 n.6). Thus, a *Franks* violation "'hold[s] the government accountable for statements made not only by the affiant but also for statements made by other government employees which were deliberately or recklessly false or misleading insofar as such statements were relied upon by the affiant in making the affidavit.'"  *Montoya*, 2022 WL 1837828, at *5 (quoting *United States v. Kennedy*, 131 F.3d 1371, 1376 (10th Cir. 1997)).

Under *Franks*, a party "may be entitled to a preliminary evidentiary hearing to challenge the truthfulness of statements in an affidavit sworn in support of a warrant." *United States v. Amaya-Nunez*, No. 20-cr-00292-WJM, 2022 WL 1423268, at *4 (D. Colo. May 5, 2022) (citing *Franks*, 428 U.S. at 155-56).  Before the Court can hold a *Franks* hearing, the moving party "must make 'a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit.'"  *Amaya-Nunez*, 2022 WL 1423268, at *4 (quoting *Franks*, 428 U.S. at 155-56; citing *United States v. Owens*, 882 F.2d 1493, 1499 (10th Cir. 1989) ("It is not enough to show . . . that an affiant's negligence or innocent mistake

resulted in false statements in the affidavit.")).   The moving party "must also make a substantial preliminary showing that 'the affidavit, purged of its falsities, would not be sufficient to support a finding of probable cause.'"  *Amaya-Nunez*, 2022 WL 1423268, at *4 (quoting *Kennedy*, 131 F.3d at 1376).

"To demonstrate recklessness, evidence must exist that the officer 'entertained serious doubts as to the truth of his allegations . . . and [a] reasonable factfinder may infer reckless disregard from circumstances evincing obvious reasons to doubt the veracity of the allegations.'"  *Amaya-Nunez*, 2022 WL 1423268, at *4 (quoting *Beard v. City of Northglenn, Colo.*, 24 F.3d 110, 116 (10th Cir. 1994)).   "'[T]he standards of deliberate falsehood and reckless disregard set forth in *Franks* apply to material omissions, as well as affirmative falsehoods.'"  *Amaya-Nunez*, 2022 WL 1423268, at *4 (quoting *Beard*, 24 F.3d at 116 (internal quotation marks omitted)).

"The Court's task, whether on the face of the pleadings or on the facts as established after a *Franks* hearing, is to reconstruct the warrant as it should have been and then decide whether probable cause existed."  *Amaya-Nunez*, 2022 WL 1423268, at *4.  As stated in *Taylor v. Meacham*, 82 F.3d 1556, 1562 (10th Cir. 1996):

> If an arrest warrant affidavit contains false statements, the existence of probable cause is determined by setting aside the false information and reviewing the remaining contents of the affidavit.  Where information has been omitted from an affidavit, we determine the existence of probable cause by examining the affidavit as if the omitted information had been included and inquiring if the affidavit would still have given rise to probable cause for the warrant.

(internal quotation marks and citation omitted).  "If a district court determines the opponent of the search warrant has proven his case by a preponderance of evidence at the hearing, then the district court must suppress the evidence obtained pursuant to the warrant."

*Amaya-Nunez*, 2022 WL 1423268, at \*4 (citing *United States v. McKissick*, 204 F.3d 1282, 1297 (10th Cir. 2000)).

In short, the Court must:

ensure that the [issuing judge] had a substantial basis for concluding that the affidavit in support of the warrant established probable cause.  The task of the issuing [judge] is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit there is a fair probability that contraband or evidence of a crime will be found in a particular place.

Because of the strong preference for searches conducted pursuant to a warrant, the Supreme Court has instructed [lower courts] to pay great deference to [an issuing] judge's determination of probable cause.  Only the probability, and not a prima facie showing, of criminal activity is the standard of probable cause.  The test is whether the facts presented in the affidavit would warrant a [person] of reasonable caution to believe that evidence of a crime will be found at the place to be searched.

*United States v. Nolan*, 199 F.3d 1180, 1182-83 (10th Cir. 1999) (some alterations incorporated; internal quotation marks and citations omitted).

## III.  Analysis

## A.    Collateral Estoppel

At the outset, the Court notes sua sponte that there is a collateral estoppel issue here which was not raised by the parties.  *See, e.g.*, *Navajo Nation v. Rael*, No. 16-cv-00888 WJ/LF, 2017 WL 3025917, at \*7 (D.N.M. Apr. 11, 2017) ("Defendants have not raised either of the preclusion doctrines (res judicata or collateral  estoppel), although the Court may raise them *sua sponte* in the interests of avoiding 'unnecessary judicial waste.'" (quoting *U.S. v. Sioux Nation*, 448 U.S. 371, 432 (1980) (Rehnquist, J. dissenting on other grds.)); *Shell v. Swallow*, No. 09-cv-00309-MSK-KMT, 2016 WL 183631, at \*7 (D. Colo. Jan. 15, 2016) ("In considering this issue, the Court notes that it is well-established that

courts may raise the issue of preclusion sua sponte. . . .  Although *Arizona* [*v. California*, 530 U.S. 392, 412 (2000),] might be read to limit a court's ability to *sua sponte* invoke principles of *res judicata* to situations in which the claims were <u>actually</u> decided in earlier litigation, numerous other courts have read *Arizona* more broadly, finding that trial courts are free to *sua sponte* invoke the full reach of the doctrines of *res judicata* and *collateral estoppel* (that is, preclusion of claims or issues that were <u>or could have been</u> litigated in the prior suit) where circumstances warrant." (emphases in original) (citing *Clodfelter v. Republic of Sudan*, 720 F.3d 199 (4th Cir. 2013) (collecting cases))).

According to the docket in Claimant Sanchez's related Colorado state court criminal case, 2020CR002298, Claimant Sanchez voluntarily pled guilty to one charge on September 2, 2021, and the Government dismissed the other charges.  *See also Terms of Plea Agreement* [#54-1].  Several months before pleading guilty, on February 3, 2021, Claimant Sanchez filed a Motion to Suppress Evidence Seized Under Search Warrant and Veracity Challenge to the Affidavit in Support of the Warrant, although that motion was not adjudicated before the plea agreement was reached.

Under similar circumstances, in *United States v. Mustek Paragon 600 Pro Flat-Bed Scanner S# B14009467*, 162 F.3d 1175 (Table), (10th Cir. Oct. 21, 1998), the Tenth Circuit Court of Appeals held that the claimant "had an opportunity to challenge the validity of the search warrant during his state court criminal proceeding, but instead voluntarily entered a guilty plea.  He therefore is collaterally estopped from raising the issue here."  In support, the Tenth Circuit cited a Sixth Circuit case, *United States v. Real Property Known & Numbered as 415 East Mitchell Ave.*, 149 F.3d 472, 476 (6th Cir.1998), which stated:

[W]e conclude [the claimant] is collaterally estopped from asserting the

> unlawfulness of the search warrant in this matter in light of his guilty plea. . . . Even if we were to find that the search was unlawful based on an inadequate affidavit, that would not eliminate a finding that probable cause existed sufficient to support a finding of a connection between the defendant property and claimant's drug activity. [The claimant] does not address the government's argument that his guilty plea is sufficient to establish probable cause to support forfeiture. We agree that this basis alone creates probable cause.

See also *Anderson v. United States*, No. 01-3277-JWL, 2002 WL 598337, at *3 (D. Kan. Feb. 27, 2002) ("Thus, plaintiff has either challenged or had the opportunity to challenge the validity of the seizures during his criminal proceeding and he therefore is collaterally estopped from doing so here."); *United States v. $393,550.00 in United States Currency*, No. 13-cv-00933-CMA-BNB, 2014 WL 4179451, at *3 (D. Colo. Aug. 22, 2014) (citing *Mustek* to find: "To the extent Claimant did not specifically brief [in the related criminal proceeding] whether he consented to the search of his bag, he had the opportunity to challenge the search on that basis, but did not."). Here, Claimant Sanchez is estopped from seeking suppression of the Overlook Affidavit in light of his guilty plea in the related underlying criminal matter.

Accordingly, the Court **recommends** that the Motion [#48] be **denied**.

## B. *Franks*

Alternatively, the Court finds that a *Franks* hearing is not warranted under the circumstances of this case. Although Claimant Sanchez complains about a broad swath of conduct by the Government, including some which appears to be connected solely to the related criminal case and not to the present forfeiture case, the current Motion [#48] appears to make three primary three arguments directly relating to whether the Overlook Affidavit properly provided probable cause. First, Claimant Sanchez argues that the later

Race Affidavit shows that the earlier Overlook Affidavit contained material misstatements, given that the Race Affidavit states, "[d]espite [CS1's] attempts, he was unable to make any purchases from SANCHEZ or GALLEGOS," and the Overlook Affidavit states that Claimant Sanchez had "delivered" narcotics to CS1 in December 2019 and "provided" CS1 with narcotics in March 2020.  *Motion* [#48] at 3, 6.  Second, Claimant Sanchez argues that the Overlook Affidavit contained a material omission by failing to include information about CS1's drug use, drug dealing, and "concealment" of 85 grams of methamphetamine and a handgun found during a search of CS1's backpack at the end of a meeting on April 19, 2020.  *Id.* at 1-2, 5-6.  Third, Claimant Sanchez argues that the Overlook Affidavit failed to disclose a recording of the April 19, 2020 transaction by CS1 which did not orally mention methamphetamine or a handgun, another material omission.  *Id.* at 6.

Plaintiff argues that Claimant Sanchez has not shown that there were materially false statements or omissions in the Overlook Affidavit.  *Response* [#54] at 5-13.  Plaintiff further argues, however, that even if the Court were to find that there were, and thus was to omit the false statements and add the omissions to the Overlook Affidavit, probable cause for the warrant would nevertheless exist.  *Id.* at 13-14.  The Court begins with this latter argument.

Probable cause is established by an affidavit for a search warrant if it shows a "fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983); *United States v. Cotto*, 995 F.3d 786, 796 (10th Cir. 2021).  A search warrant affidavit must "establish a substantial nexus between the crime and the place to be searched" in order to demonstrate probable cause.  *Cotto*, 995 F.3d at 796.  This nexus is established if it "describes circumstances which would warrant

a person of reasonable caution in the belief that the articles sought are at a particular place."  *Id.*  "Affidavits for search warrants are to be tested and interpreted in a common sense and realistic manner."  *United States v. Rahn*, 511 F.2d 290, 292 (10th Cir. 1975).

The Court first examines the Overlook Affidavit *without any* evidence provided by CS1 to determine whether the affidavit nevertheless contains enough information to support a finding of probable cause for search of Claimant Sanchez's residence.  *See Amaya-Nunez*, 2022 WL 1423268, at *4 (stating that the moving party "must also make a substantial preliminary showing that 'the affidavit, purged of its falsities, would not be sufficient to support a finding of probable cause'" (quoting *Kennedy*, 131 F.3d at 1376)); *Herrara*, 782 F.3d at 575 ("[W]hether we're talking about acts or omissions the judge's job is much the same—we must ask whether a warrant would have issued in a but-for world where the attesting officer faithfully represented the facts." ).  Excising all information about or provided by CS1, the affidavit states:

> On April 19, 2020, at approximately 3:00 P.M., SA Fitzroy Robinson established surveillance in the vicinity of SANCHEZ's residence, located at 1431 Grand Overlook St, Colorado Springs, CO.
>
> Upon arrival, SA Robinson observed a white in color [sic] DR Electric van and a Black Ford F-150, Platinum model, with temporary registration, park curbside of SANCHEZ's residence.  Previous Colorado Department of Revenue records checks indicated that the above vehicles were registered to SANCHEZ.
>
> SA Robinson also observed a maroon color Chevrolet Suburban, Colorado registration CDA988 park [sic] in the driveway.  The vehicle appeared unoccupied.  A DMV inquiry indicated the above vehicle was registered to Leilani GARCIA, 5220 Water Dipper, Colorado Springs, CO.
>
> At approximately 3:10 P.M., SA Robinson observed a black Dodge RAM, Colorado registration number KWO645, drive north on Grand Overlook St and park on the west side of the street in front of SANCHEZ's residence. Moment [sic] later SA Robinson observed a male passenger, identified as

Joseph GALLEGOS (DOB 08/18/1984), wearing black shirt and black pants, exit the vehicle and enter the residence.  The unidentified driver remained in the vehicle.

At approximately 3:15 P.M., SA Robinson observed a Hispanic male, approximately 5'7", medium built, exit the residence and walk to the passenger side of the vehicle.  Based on prior surveillance, SA Robinson recognized the Hispanic male to be Anthony GARCIA, a known drug dealer.  SA Robinson observed GARCIA enter the driver side of the vehicle, reverse and drive south on Grand Overlook St.

At approximately 3:18 P.M., SA Robinson observed GALLEGOS exit the residence carrying a medium size package wrapped in white plastic bag underneath his left arm.  SA Robinson observed GALLEGOS sit in the front passenger seat.  Moments later, SA Robinson observed the vehicle depart the area.

At 3:20 P.M., SA Robinson observed a white Chevrolet Silverado, bearing Colorado registration number BAZ830, drive south on Grand Overlook St and park in front of SANCHEZ's residence.  SA Robinson observed a white male, approximately 5'9", 230 lbs, wearing a grey shirt and blue jeans, exit the vehicle, carrying package wrapped in plastic.  SA Robinson observed the unidentified male enter the residence.

At approximately 4:00 P.M., SA Robinson observed the unidentified white male, along with a Hispanic male, wearing a long, white T-shirt, and baseball cap turned backward, carrying a medium sized bag pack [sic].  The bag pack [sic] appeared weighted down.  Based on previous surveillance, the Hispanic male appeared to be SANCHEZ.  Moments later, SA Robinson observed the unidentified white male enter the driver side door and SANCHEZ enter the front passenger side door.  Shortly thereafter, SA Robinson observed the vehicle depart the area.

Later this date, SA Robinson was informed by CS-20-162280 (CS2) that GALLEGOS, driving a Dodge RAM pickup truck, Colorado registration number KWO645, had picked up a quantity of cocaine and methamphetamine from SANCHEZ's residence.  CS2 also informed that approximately 2-3 weeks age [sic], while visiting SANCHEZ at his residence, CS2 observed SANCHEZ place a quantity of suspected methamphetamine in a freezer inside the residence.  CS2 also stated that SANCHEZ stores narcotics within a gym bag within his residence.

*Overlook Aff.* [#48-2] at 4-5.

Removing the information about and provided by CS1 creates a number of issues

with the affidavit, including the fact that the information provided by CS2 appears to be entirely hearsay yet is the only information *directly* connecting the residence with drug dealing.[2]  The other information here provides only indirect evidence of drug dealing.  For example, there are references to (1) a visit by a "known drug dealer" (although without any explanation as to the basis for that knowledge), (2) Gallegos taking a package out of Claimant Sanchez's residence, (3) an unidentified person taking a package into Claimant Sanchez's residence, and (4) a man who appeared to be Claimant Sanchez carrying a weighted down "bag pack" (although without indicating that the pack actually came from the residence).  Taken together, this information provides scanty evidence in support of probable cause for drug dealing at Claimant Sanchez's residence.

However, the Court also notes that it is not convinced that removing alleged falsities and adding alleged material information would cause a reviewing judge to *completely* discount all of CS1's evidence in the Overlook Affidavit [#48-2], particularly with respect to the events of April 19, 2020.  *See Herrara*, 782 F.3d at 575 ("[O]ften people prove reliable truth tellers in some areas even when they are not in others.").  With respect to CS1, the original Overlook Affidavit provides:

> On December 10, 2019, SANCHEZ delivered a clear plastic bag, containing 3.7 gross grams of methamphetamine, Exhibit (EX2), and a clear plastic bag, containing 5.7 gross grams of cocaine, Exhibit (EX3), to CS 20-161483 (CS1).  On December 11, 2019, CS1 delivered EX2 and EX3 to TFO Andrew Jackson, as witnessed by TFP Marc DeFusco.  Both EX2 and EX3 were processed into evidence.  After conducting a field test, EX2 indicated positive

---

[2]  Claimant Sanchez belatedly, and obliquely, raises this issue in a one-sentence argument for the first time in his Reply [#58], stating: "Further, the Affidavit fails to establish the basis for CS-2's alleged accusation that Gallegos had picked up narcotics from Sanchez's residence."  *Reply* [#58] at 2.  The Court notes that, not only was CS2 not even mentioned in the original Motion [#48], Claimant Sanchez failed to provide any legal authority in the Reply [#58] on this issue.

for the presence of methamphetamine and EX3 indicated positive for the presence of cocaine.  On December 12, 2019, EX2 and EX3 were mailed to the Western Regional Laboratory, via FedEx, for analysis and storage.

On March 11, 2020, at approximately 10:00 P.M., during a meeting at SANCHEZ's residence, 1431 Grand Overlook St, Colorado Springs, CO, SANCHEZ provided CS1 a quantity of suspected methamphetamine, Exhibit (EX6), contained within a clear ziplock bag.

On March 13, 2020, at approximately 1:00 P.M., at the Colorado Springs Resident Office (CSRO), CS [sic] provided EX6 to SA Fitzroy Robinson, as witnessed by TFP Paul Heblinger.  On this date, SA Robinson and SA Adam Knox conducted a field test of EX6 which weighed approximately 60.9 gross grams, and indicated positive for the presence of methamphetamine.  SA Robinson processed EX6 in the CSRO temporary drug vault for safekeeping and storage.  On March 16, 2020, SA Robinson removed EX6 from the CSRO temporary storage vault and mailed EX6 to the Western Regional Laboratory, using FedEx tracking number 813537533215.

. . .

Later this date [April 19, 2020], at approximately 10:30 P.M., CS1 visited SANCHEZ at his residence, 1431 [G]rand Overlook St.  During this visit, SANCHEZ provided CS1 with approximately 0.25 lbs. of suspected methamphetamine and a firearm.  Upon leaving the residence, CS1 provided the suspected methamphetamine, Exhibit (EX8), and firearm to SA Robinson, as witnessed by Det. Mario Aoki.  Both EX8 and the firearm were subsequently processed into evidence.

*Overlook Aff.* [#48-2] at 3-4, 5.

To reiterate, the information which Claimant Sanchez argues should be omitted as false or added as material is as follows: (1) omit information that Claimant Sanchez had "delivered" narcotics to CS1 in December 2019 and "provided" CS1 with narcotics in March 2020, given that the later Race Affidavit states that CS1 "was unable to make any purchases" from Claimant Sanchez or Gallegos[3]; (2) add information about CS1's drug use,

---

[3]  The Court notes that these statements are *possibly* but not *necessarily* at odds with one another, especially given Agent Robinson's later in-court testimony that it was believed that Claimant Sanchez gave drugs to CS1 either as a front (to be sold and later repaid), as a gift, or as

drug dealing, and "concealment" of 85 grams of methamphetamine and a handgun found during a search of the CS1's backpack at the end of a meeting on April 19, 2020; and (3) add information by disclosing a recording of the April 19, 2020 transaction by CS1 which did not orally mention methamphetamine or a handgun.  *See generally Motion* [#48].

As Plaintiff points out, CS1 was observed at Claimant Sanchez's residence by an agent on April 19, 2020, supporting a finding that CS1 would have some knowledge of the residence that was to be searched.  *Overlook Aff.* [#48-2] at 5.  Even assuming that CS1 was an "unsavory character" as a drug dealer and user, and that he initially failed to turn over everything he allegedly received from Claimant Sanchez on April 19, 2020, this alone does not mean that he was "generally untrustworthy" as to the information he provided, even if the words "methamphetamine" and "handgun" were not explicitly mentioned at that meeting.  *See Herrara*, 782 F.3d at 575.  Although CS1's credibility could certainly be called into question by some of this information, the Court finds that a reasonable judge reviewing an Overlook Affidavit [#48-2] which included this information would not necessarily need to discount the entirety of the evidence provided by CS1.

Removing alleged false information and adding alleged material information certainly weakens the probable cause provided in the Overlook Affidavit.  However, even with these changes, the Court finds that the Overlook Affidavit  establishes probable cause. Because Claimant Sanchez has failed to make a preliminary showing that the probable cause provided in the Overlook Affidavit seeking a search warrant for his residence was materially

---

a sample.  *See Nov. 10, 2020 Hearing Testimony* [#48-1] at 30-33.  The Court makes no finding of fact on this issue, including on the credibility of Agent Robinson's statements, but merely notes that the testimony does provide a possible explanation for the apparent discrepancy.

impacted by any alleged false information or alleged omissions, the Court finds no *Franks* hearing is necessary.  *See Amayo-Nunez*, 2022 WL 1423268, at *5 (citing *Franks*, 438 U.S. at 155-56).

## IV.  Conclusion

For the reasons stated above,

IT IS HEREBY **RECOMMENDED** that the Motion [#48] be **DENIED**.

IT IS FURTHER **ORDERED** that pursuant to Fed. R. Civ. P. 72, the parties shall have fourteen (14) days after service of this Recommendation to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned.  A party's failure to serve and file specific, written objections waives de novo review of the Recommendation by the District Judge, Fed. R. Civ. P. 72(b); *Thomas v. Arn*, 474 U.S. 140, 147-48 (1985), and also waives appellate review of both factual and legal questions.  *Makin v. Colo. Dep't of Corr.*, 183 F.3d 1205, 1210 (10th Cir. 1999); *Talley v. Hesse*, 91 F.3d 1411, 1412-13 (10th Cir. 1996).  A party's objections to this Recommendation must be both timely and specific to preserve an issue for de novo review by the District Court or for appellate review.  *United States v. One Parcel of Real Prop.*, 73 F.3d 1057, 1060 (10th Cir. 1996).

Dated:  January 12, 2023

BY THE COURT:

Kristen L.  Mix
United States Magistrate Judge